CLERK'S OFFICE
U.S. DISTRICT COURT
SAN JUAN, P.R.
2002 FEB 20 AM 11:34
RECEIVED AND FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

CARLOS A. GARCÍA-PÉREZ, et al.,

Plaintiffs

v.

ÁLVARO SANTAELLA, et al.,

Defendants-Third-Party Plaintiffs

CIVIL 97-1703 (JAG)

v.

DR. MARÍA T. CASADO-GARCÍA, et al.,

Third-Party Defendants

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter is before the court on motion to dismiss for lack of diversity jurisdiction filed on March 23, 2001 by third-party defendant Dr. Iván Terón. (Docket No. 119.) On May 7, 2001 plaintiff Carlos A. García-Pérez, his wife Gisela Baerga-Torres and daughter Carla García-Baerga, filed a motion in opposition to Dr. Terón's motion to dismiss. (Docket No. 126.) Third-party defendant Dr. Amaury Vélez Torres filed a motion joining motion to dismiss for lack of diversity jurisdiction and reply to plaintiff's opposition to motion to dismiss. (Docket No. 140.)

## I. FACTUAL BACKGROUND

On May 6, 1996, plaintiff Gisela Baerga-Torres gave birth at the Ashford Presbyterian Community Hospital to quadruplet girls. (Docket No. 1.) Plaintiffs claim that defendant Dr. Alvaro Santaella and/or the Neonatology Group at the hospital,





provided negligent hospital care to the four girls immediately after their birth. Plaintiffs also claim that due to the negligent care the girls received, only one of the girls survived, Carla Isabel. Plaintiffs have brought a malpractice suit against all defendants and under title 28 U.S.C. § 1332(a)(2) have invoked the court's subject matter jurisdiction based on diversity of citizenship.

Dr. Iván Terón argues in his motion that plaintiffs have failed to comply with the requirements asserting diversity of citizenship jurisdiction, since they were not domiciled in Florida, but rather in Puerto Rico, at the time the suit was filed. (Docket No. 119.) Plaintiffs claim that the facts demonstrate that they were domiciled in Florida and not in Puerto Rico when the action was commenced. (Docket No. 126.) Plaintiffs aver that because the defendant relied upon matters outside of the pleadings, his motion should be treated as a motion for summary judgment.

## II. MOTION TO DISMISS

Rule 12(b)(1) states in its relevant part that "[e]very defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except the following defenses may at the option of the pleader be made by motion: (1) lack of jurisdiction over the subject-matter[.]" Fed. R. Civ. P. 12(b)(1).

There are two ways in which a defendant can challenge the jurisdiction. One way is to attack the sufficiency of plaintiff's version, thus requiring the court to assess whether the plaintiff has propounded an adequate basis for subject-matter jurisdiction. Valentín v. Hospital Bella Vista, 254 F.3d 358, 363 (1st Cir. 2001). The second way is by converting the accuracy of the jurisdictional facts asserted by the plaintiff and proffering materials of evidentiary quality in support of that position. Id. at 363. "Unlike, say, a motion for summary judgment under Federal Rule of Civil Procedure--Rule 56(c), this type of

challenge under Federal Rule of Civil Procedure 12(b)(1)--which we call a 'factual challenge'--permits (indeed, demands) differential fact finding. Thus, the plaintiff's jurisdictional averments are entitled to no presumptive weight; the court must address the merits of the jurisdictional claim resolving the factual disputes between the parties." Valentín v. Hospital Bella Vista, 254 F.3d at 363. The reason behind these rules is that "when a factbound jurisdictional question looms, a court must be allowed considerable leeway in weighing the proof, drawing reasonable inferences, and satisfying itself that subject-matter jurisdiction has attached." Id. at 364.

The motion to dismiss in this case plainly makes factual challenges. The defendant questions the accuracy of plaintiffs' jurisdictional allegations as opposed to the sufficiency of the same. Valentín v. Hospital Bella Vista, 254 F.3d at 364. In view of the above, the motion to dismiss should be treated as the such, and not as a motion for summary judgment as plaintiffs requested.

III. DIVERSITY JURISDICTION

Title 28 U.S.C. § 1332(a)(2) states in its relevant part that: "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between ... (2) citizens of a State and citizens or subjects of a foreign state[.]" 28 U.S.C. § 1332(a)(2). "Federal jurisdiction based on diversity of citizenship requires that the matter in controversy be between citizens of different states." Bank One, Texas, N.A. v. Montle, 964 F.2d 48, 49 (1st Cir. 1992). "For purposes of diversity, a person is a citizen of the state in which he is domiciled." Id. at 49; see also Lundquist v. Precision Valley Aviation, Inc., 946 F.2d 8, 10 (1st Cir. 1991); Rodríguez-Díaz v. Sierra-Martínez, 853 F.2d 1027, 1029 (1st Cir. 1988); Valedón-Martínez v. Hospital Presbiteriano de la Comunidad, Inc., 806 F.2d 1128, 1132 (1st Cir. 1986). "A person's domicile 'is the place where he has a true, fixed home and

principal establishment, and to which, whenever he is absent he has intention of returning.'" Bank One, Texas, N.A. v. Montle, 964 F.2d at 49 (citing Rodríguez-Díaz v. Sierra-Martínez, 853 F.2d at 1029); see also Valentín v. Hospital Bella Vista, 254 F.3d at 366. Diversity of citizenship must be determined as of the time of the suit. Valentín v. Hospital Bella Vista, 254 F.3d at 361; see also Bank One, Texas, N.A. v. Montle, 964 F.2d at 49.

There are several factors that courts have to take into consideration when determining the domicile of a party. Lunquist v. Precision Valley Aviation, Inc., 946 F.2d at 11. "While it is impossible to catalogue all factors bearing on the issue, they include the place where civil and political rights were exercised, taxes paid, real and personal property located, driver's and other licenses obtained, bank accounts maintained, location of club and church membership and places of business and employment." Id. at 11-12 (citing 1 Moore's Federal Practice ¶ 0.74[3.-3], at 788 (2nd ed. 1991)); see also Bank One, Texas, N.A. v. Montle, 694 F.2d at 50.

## IV. DISCUSSION

Defendants' primary evidence that plaintiffs were citizens of Puerto Rico is as follows: (1) that plaintiffs moved to Florida to receive medical treatment for Carla; (2) that plaintiffs would return to Puerto Rico after Carlas' full recovery; (3) that plaintiffs used their bank accounts in Puerto Rico; (4) that plaintiffs still maintained their house in Gurabo; (5) that plaintiff Carlos A. García-Pérez travels at least twice a month to Puerto Rico; (6) that plaintiff's family travels every year to Puerto Rico for Christmas; (7) that plaintiffs are owners of 50% of Calbert, Inc., a corporation that owns a Taco Maker in Guayama; (8) that plaintiff Carlos A. García-Pérez is an active member of the "Colegio de Abogados de Puerto Rico"; (9) that plaintiffs, since they moved to Florida, have filed

income tax returns in Puerto Rico; (10) and that plaintiffs maintained a Puerto Rico health care insurer for six months, after moving to Florida. (Docket No. 119.)

Plaintiffs presented the following evidence to demonstrate that they are citizens of Florida and not of Puerto Rico: (1) that shortly after they moved to Miami, plaintiffs filed a change of address with the Post Office in Puerto Rico listing their new Miami address; (2) that both plaintiffs, Carlos and Gisela, obtained Miami driver's licenses and turned in their Puerto Rico driver's license; (3) that they also purchased two cars in Miami, sold their car in Puerto Rico, and opened a bank account in Miami; (4) that Carlos A. García-Pérez signed up and paid in full for a study course for the Florida bar exam, which he later passed; (5) that the following year they signed a one-year contract to rent an apartment and decided to rent their unfurnished house in Gurabo until it was sold five years later; (6) that Carlos A. García-Pérez opened a law office for the law firm that he worked for in Puerto Rico and soon was concentrating his efforts in the Miami office and its clientele; (7) that plaintiffs had two children after moving to Miami; (8) that they bought a house in Miami as their family grew; (9) that Carlos A. García-Pérez resigned his job at the Miami office and accepted a job offer with another law firm in Miami; (10) that plaintiffs filed tax returns with the federal government, since Florida does not have income taxes, and in Puerto Rico as non-residents for the years 1997, 1998, and 1999; (11) that Carlos A. García-Pérez is registered to vote in Florida; (12) that their 50% interest in Calbert, Inc., is purely an investment interest and does not require their involvement in the day to day operations of the Taco Maker; (12) that they lived in Miami from June 21, 1996, until April 10, 2001 when they decided to return to Puerto Rico due to an excellent job offer Carlos received and because they wanted to be near their aging parents.

In support of these facts, plaintiffs recur to their own sworn statements as well as of other individuals such as, Mr. Sergio Álvarez Mena a friend of the plaintiffs who lives in

Florida, and of landlord Mr. Cary L. Dudzic. (Docket No. 126.) Plaintiffs also rely on various depositions that are identified as exhibits 1-3. (Docket No. 126.)

Plaintiffs have presented sufficient evidence that not only contradicts defendant's allegations but indicate that they were in fact domiciled in Florida at the time the suit was filed. Plaintiff Carlos A. García-Pérez was registered to vote in Florida, had passed Florida's bar exam and had opened an office in Miami. Plaintiffs also bought a house and two cars in Miami and had two children there as well. As soon as Carlos A. García-Pérez settled in Miami and took on another job with a law firm, plaintiffs only visited Puerto Rico while on vacation. Although plaintiffs' main reason to move to Miami was due to the medical needs of their daughter, this can not be synonymous to plaintiffs' intent and desire to return to Puerto Rico. "It has long been the rule that motive for the change in residence is irrelevant in determining domicile." Hawes v. Club Ecuestre El Comandante, 598 F.2d 698, 702 (1st Cir. 1979). Plaintiffs, for whatever reasons, made a deliberate decision to go to Florida for an indefinite period of time. Id. at 702. Once there, they took all the necessary steps to acquire domicile. Id. They took out drivers license, one of them registered to vote, Carlos obtained employment and they purchased a home. The fact that they did not sell their house immediately after they moved, they owned part of a corporation in Puerto Rico and visited Puerto Rico on occasions, does not evince plaintiff's intent to visit Miami only temporarily. "There must be an intention to remain at the new residence indefinitely; it is not required that the intention be to stay there permanently." Id. at 701. Plaintiffs had intentions of remaining in Miami indefinitely, but "[their] 'floating intention[s]' to return to a former domicile does not prevent the acquisition of [their] new domicile." Id.

In view of the above, I recommend that defendant's motion to dismiss for lack of diversity jurisdiction (Docket No. 119) be DENIED.

Under the provisions of Rule 510.2, Local Rules, District of Puerto Rico, any party who objects to this report and recommendation must file a written objection thereto with the Clerk of this Court within ten (10) days of the party's receipt of this report and recommendation. The written objections must specifically identify the portion of the recommendation, or report to which objection is made and the basis for such objections. Failure to comply with this rule precludes further appellate review. See Thomas v. Arn, 474 U.S. 140, 155 (1985), reh'g denied, 474 U.S. 1111 (1986); Davet v. Maccorone, 973 F.2d 22, 30-31 (1st Cir. 1992); Paterson-Leitch Co. v. Massachusetts Mun. Wholesale Elec. Co., 840 F.2d 985 (1st Cir. 1988); Borden v. Secretary of Health & Human Servs., 836 F.2d 4, 6 (1st Cir. 1987); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603 (1st Cir. 1980).

At San Juan, Puerto Rico, this 19th day of February, 2002.

JUSTO ARENAS
United States Magistrate Judge