IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

CARLOS A. GARCIA-PEREZ, et al

    **Plaintiff(s)**

    v.

ALVARO SANTAELLA, et al

    **Defendant(s)**

CIVIL NO. 97-1703 (JAG)

---

## OPINION AND ORDER

GARCIA-GREGORY, D.J.

    Plaintiffs Carlos A. Garcia-Perez, Gisela M. Baerga-Torres, the conjugal partnership constituted between them, Carla Isabel Garcia-Baerga, Estate of Maria Garcia, Estate of Ana Garcia, Estate of Adriana Garcia (collectively, "plaintiffs") sued defendants Ashford Presbyterian Community Hospital, Dr. Alvaro Santaella and others(collectively, "defendants") for medical malpractice under Puerto Rico state law. Plaintiffs contend that the Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, the federal diversity statute. Third-party defendant Dr. Ivan Teron Mendez ("Teron") has filed a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). (Docket No. 119.) The Court referred the motion to Magistrate-Judge Justo Arenas for a

Civil No. 97-1703(JAG)                                                          2

report and recommendation. On February 20, 2002, Magistrate-Judge Arenas recommended that the Court deny Teron's motion (Docket No. 160). On March 4, 2002, Teron filed objections to the report and recommendation (Docket No. 162). Upon review of the objections, the Court **REJECTS** the Magistrate-Judge's report and recommendation, and **GRANTS** Teron's motion and dismisses the Complaint for want of subject matter jurisdiction.

### FACTUAL BACKGROUND[1]

On May 6, 1996, plaintiff Gisela Baerga-Torres gave birth at the Ashford Presbyterian Community Hospital to quadruplet girls. (Docket No. 1.) Plaintiffs claim that defendant Dr. Alvaro Santaella and/or the Neonatology Group at the hospital provided negligent hospital care to the four girls immediately after their birth. Plaintiffs also claim that due to the negligent care the girls received, only one of the girls survived, Carla Isabel. Plaintiffs have brought a malpractice suit against all defendants and pursuant to title 28 U.S.C. § 1332(a)(2) have invoked the court's subject matter jurisdiction based on diversity of citizenship.

---

[1] The factual background is taken from the Magistrate Judge's report and recommendation.

Civil No. 97-1703(JAG) 3

Dr. Ivan Terón argues in his motion that plaintiffs have failed to comply with the jurisdictional requirements to properly assert a citizenship diverse from that of defendants, inasmuch as they were not domiciled in Florida, but rather in Puerto Rico, at the time this suit was filed in May 1997[2]. (Docket No. 119.) Plaintiffs claim that the facts demonstrate that they were domiciled in Florida and not in Puerto Rico when the action was commenced. (Docket No. 126.)

### STANDARD FOR REVIEWING A MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

A district court may, on its own motion, refer a pending matter to a United States Magistrate-Judge for a report and recommendation. See 28 U.S.C. §636(b)(1)(B) (1993); Fed.R.Civ.P. 72(b); Rule 503, Local Rules, District of Puerto Rico. Pursuant to Federal Rule of Civil Procedure 72(b) and Local Rule 510.2, the adversely affected party may contest the report and recommendation by filing written objections "[w]ithin ten days of being served" with a copy of the order. 28 U.S.C. § 636(b)(1). Since Teron has filed timely objections to the report and recommendation, the Court shall make a *de novo* determination of those portions of the report or specified

---

[2] It is undisputed that all defendants were citizens of Puerto Rico when the Complaint was filed.

Civil No. 97-1703(JAG)                                                    4

proposed findings or recommendations to which objection is made. See United States v. Raddatz, 447 U.S. 667, 673 (1980); Lopez v. Chater, 8 F. Supp.2d 152, 154 (D.P.R. 1998).

**DISCUSSION**

As courts of limited jurisdiction, federal courts have the duty of construing jurisdiction-granting statutes strictly. See, e.g., Alicea-Rivera v. SIMED, 12 F. Supp. 2d 243, 245 (D.P.R. 1998). Here, plaintiffs have invoked the Court's jurisdiction pursuant to the diversity statute, 28 U.S.C. § 1332. Diversity jurisdiction requires complete diversity between all plaintiffs and all defendants. See Casas Office Machines v. Mita Copystar America, Inc., 42 F.3d 668, 673 (1st Cir. 1994). Teron has challenged plaintiffs' jurisdictional allegations; accordingly, plaintiffs bear the burden of proving, by a preponderance of the evidence, the facts supporting jurisdiction. Bank One v. Montle, 964 F.2d 48, 50 (1st Cir. 1992); O'Toole v. Arlington Trust Co., 681 F.2d 94, 98 (1st Cir. 1982).

"For federal jurisdictional purposes, diversity of citizenship must be established as of the time of suit." Valentin v. Hospital Bella Vista, 254 F.3d 358, 361 (1st Cir. 2001)(citing Bank One, 964 F.2d at 49). Accordingly, the critical date here is May 5, 1997, the date on which plaintiffs filed their complaint. Plaintiffs'

Civil No. 97-1703(JAG)                                                    5

jurisdictional argument hinges on their contention that they were residents of Florida for diversity purposes when they filed suit. Teron contends that, on that date, plaintiffs were domiciled in Puerto Rico.

For purposes of diversity jurisdiction, citizenship usually is equated with domicile. Valentin, 254 F.3d at 366. A person is a citizen of the state in which he is domiciled. Lundquist v. Precision Valley Aviation, Inc., 946 F.2d 8, 10 (1st Cir. 1991). Domicile generally requires two elements: (1) physical presence in a state, and (2) the intent to remain there indefinitely. Valentin, 254 F.3d at 366. A person's domicile is the "place where he has his true, fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning." Id. (citing Rodriguez-Diaz v. Sierra-Martinez, 853 F.2d 1027, 1029 (1st Cir. 1988)). It is not required that the intention be to stay there permanently, however. A plaintiff maintains his domicile until it can be proven, by clear and convincing evidence, that he has changed it. Id.

While a party may have more than one residence, he has only one domicile. See Hawes v. Club Ecuestre El Comandante, 598 F.2d 698, 701 (1st Cir. 1979). To ascertain a person's domicile (particularly if there is evidence that a party's domicile is unclear), the Court must

focus on the party's intent. Palermo v. Abrams, 62 F. Supp. 2d 408, 410 (D.P.R. 1999). The analysis calls for a "totality of the evidence" approach, and no single factor is conclusive. Id. Courts must make these determinations on a case-by-case basis. Id.

Some of the factors traditionally considered when determining a party's domicile are: (1) the person's place of voting; (2) the location of the person's real and personal property; (3) the state issuing the person's driver's license; (4) the state where the person's bank accounts are maintained; (5) club or church membership; and (6) the person's place of employment. Palermo, 62 F. Supp. 2d at 410 (citing Bank One, 964 F.2d at 50). The determination of domicile is a mixed question of law and fact. Id.

Since the presumption is that domicile remains the same until proven otherwise by clear and convincing evidence, see Bank One, 964 F.2d at 50, and inasmuch as plaintiffs argue that plaintiffs changed their domicile to Florida, the Court will consider whether plaintiffs changed their domicile to Florida on or before May 5, 1997, the date the Complaint was filed. The gist of the Magistrate Judge's recommendation is that plaintiffs were domiciled in Florida on May 5, 1997. The Magistrate Judge used the following evidence to ascertain domicile in Florida and not in Puerto Rico: (1) that shortly after

Civil No. 97-1703(JAG)                                                                    7

plaintiffs moved to Miami, they filed a change of address with the Post Office in Puerto Rico listing their new Miami address; (2) that both plaintiffs, Carlos and Gisela, obtained Miami driver's licenses and turned in their Puerto Rico driver's license; (3) that they also purchased two cars in Miami, sold their car in Puerto Rico, and opened a bank account in Miami; (4) that plaintiff Carlos A. Garcia-Perez signed up and paid in full for a study course for the Florida bar exam, which he later passed; (5) that the following year they signed a one-year lease contract for an apartment and decided to lease their unfurnished house in Puerto Rico; (6) that plaintiff Carlos A. Garcia-Perez opened a law office in Miami for the law firm where he used to work in Puerto Rico and soon was concentrating his efforts in the Miami office and its clientele; (7) that plaintiffs had two children after moving to Miami; (8) that plaintiffs filed tax returns with the federal government, inasmuch as Florida does not impose state taxes, and they filed in Puerto Rico as non-residents in 1997; (9) that plaintiff Carlos A. Garcia-Perez registered to vote in Florida; and (10) that plaintiffs lived in Miami from June 21, 1996, until April 10, 2001 when they decided to return to Puerto Rico due to an excellent job offer Carlos received and because they wanted to be near

Civil No. 97-1703(JAG)                                                                 8

their aging parents.  (Docket 160, Magistrate Judge's Report and Recommendation at 5).

Thus, plaintiffs have produced competent evidence that plaintiff Garcia-Perez held a Florida voting card, opened a bank account and had a Florida driver's license.  Nevertheless, other factors such as location of property and place of employment point strongly to Puerto Rico as the place of domicile.  From 1996 to 1997, plaintiffs never bought property in Florida and never sold their residence in Puerto Rico; by contrast, they leased their house in Puerto Rico. Furthermore, a review of the Objections to the Magistrate Judge's Report and Recommendation (Docket 162) and of plaintiff Carlos-Garcia-Perez's deposition indicates that, between June 21, 1996 and May 5, 1997, plaintiffs always remained domiciled in Puerto Rico, and never lost this domicile, despite their move to Florida in 1996.

From plaintiff Garcia-Perez's deposition it appears that he lacked the intent to change his domicile to Florida.  Most notably, both Garcia-Perez and his wife maintained an ATM Bank Card with a Bank in Puerto Rico, which they used on a regular basis.  (Carlos Garcia-Perez's deposition page 87, line 16, to page 87, line 18).  In 1997, when the complaint was filed, Garcia-Perez rendered professional services to the Puerto Rico Law Firm of Goldman & Antonetti and its

Civil No. 97-1703(JAG)                                                                 9

clients in Puerto Rico. (Carlos-Garcia-Perez's deposition page 162, line 13, to page 162, line 23). Garcia-Perez traveled from Miami to Puerto Rico to render those services. (Carlos-Garcia-Perez's deposition page 162, line 13, to page 162, line 23). Regarding club membership, Carlos Garcia maintained his status as an active member of the Puerto Rico Bar Association. (Carlos-Garcia-Perez's deposition page 190, lines 8-13). Garcia-Perez was also the President of Calvert, Inc. a Puerto Rico corporation. (Carlos Garcia-Perez's deposition page 90, line 12, to page 90, line 13). He also traveled to Puerto Rico, at least twice a month, to take care of his business with Calvert, Inc. (Carlos Garcia-Perez's deposition page 88, line 25, to page 89, line 8). Calvert, Inc., held regular board meetings in Puerto Rico. (Carlos-Garcia-Perez's deposition page 90, line 9, to line 11). Plaintiff Gisela Baerga had a contract for professional services with Calvert, Inc. (Carlos-Garcia-Perez's deposition page 90, line 15, to page 90, line 25). Plaintiff Carlos Garcia and his wife Gisela Baerga filed personal income tax returns in Puerto Rico in 1996, 1997, 1998 and 1999. (Carlos-Garcia-Perez's deposition page 176, line 10, to page 176, line 15). Plaintiff Garcia-Perez also filed Calvert, Inc.'s Puerto Rico Income Tax returns from 1996 to 1999. (Carlos-Garcia-Perez's deposition page 164, line 8, to page

Civil No. 97-1703(JAG)                                                              10

164, line 10). Finally and more importantly, plaintiff Garcia-Perez stated in his deposition that he thought "just about every other day" about returning to Puerto Rico. (Carlos-Garcia-Perez's deposition page 82, line 20-25).

Thus, plaintiff Garcia-Perez' deposition furnishes indicia that plaintiffs' intent was not to change their domicile to Florida. Accordingly, Teron has proffered sufficient evidence to establish that plaintiffs did not change their domicile to Florida, and plaintiffs have failed to rebut this evidence with clear and convincing proof that their domicile changed to Florida on or before May 5, 1997. On these facts, the Court is unable to say that, on the filing date in question, plaintiffs were domiciled in Florida.

"[W]ithout a preponderance of evidence establishing diversity the district court [lacks] judicial power to adjudicate this controversy under § 1332(a)(1)." Francis v. Goodman, 81 F.3d 5, 6 (1st Cir. 1996). The Court concludes, therefore, that plaintiffs were still domiciled in Puerto Rico when they filed this suit. Inasmuch as defendants are also domiciled in Puerto Rico, there is no complete diversity among opposing parties and the Court lacks jurisdiction to entertain this action pursuant to 28 U.S.C. § 1332. Plaintiffs are

Civil No. 97-1703(JAG)                                                                 11

certainly free to pursue their tort claim against defendants but they may not do so in this Court.

## CONCLUSION

For the foregoing reasons, the Court **REJECTS** the Magistrate Judge's report and recommendation, **GRANTS** Teron's motion to dismiss, and dismisses the Complaint for lack of subject matter jurisdiction. Judgment shall enter accordingly.

IT IS SO ORDERED.

San Juan, Puerto Rico, this 28th day of June 2002.

_____
JAY A. GARCIA GREGORY
United States District Judge

AO 72A
(Rev. 8/82)