IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | | |
|---|---|---|
| CARLOS A. GARCIA PEREZ, et al | * | |
| Plaintiff | * | CIVIL NO. 97-1703 (JGG) |
| v. | * | |
| ALVARO SANTAELLA, et al | * | |
| Defendants-Third Party Plaintiffs | * | |
| v. | * | |
| DR MARIA T CASADO GARCIA, et al | * | |
| Third Party Defendants | * | |

-----------------------------------------------------

# STATEMENT OF UNCONTESTED MATERIAL FACTS

TO THE HONORABLE COURT:

COMES NOW Dr. Iván Terón Méndez, through his undersigned attorneys, and respectfully submits the following Statement of Uncontested Material Facts which support the appearing party's Motion for Summary Judgment:

1. Plaintiffs' rely solely on the testimony of Dr. Kenneth Harkavy to prove their allegations of medical malpractice against Dr. Ivan Terón Méndez.

2. In his expert report dated August 9, 1999, Dr. Kenneth Harkavy does not mention any acts or omissions of Dr. Ivan Terón Méndez as a deviation of the applicable medical standard (*Exhibit 1*).

3. Dr. Kenneth Harkavy's testimony in his depositions does not present any evidence in which to base a claim against Dr. Iván Terón (*Exhibit 2*)[1].

4. The elective extubation of Baby A on May 7, 1996, is considered by Dr. Harkavy as substandard care (*Exhibit 2, page 248, lines 2-7*). Dr. Terón did not extubate nor give the order to extubate the patient. Dr. Harkavy's deposition testimony clearly stated that Dr. Terón's presence and treatment on May 7, 1996, did not have any relationship with Baby A's demise (*Exhibit 2, page 248, lines 16-18*).

5. Dr. Harkavy testified that in his opinion Baby B did not receive adequate treatment for her condition of Sudomona Sepsis by all doctors who intervened in the case from May 18 to May 20, 1996 (*Exhibit 2, page 248, lines 19-24; page 249, lines 5-8*). The only intervention by Dr. Iván Terón with Baby B within the periods specified by Dr. Harkavy for the treatment of Sudomona Sepdis was on May 20, 1996. Dr. Harkavy specifically answered that there is no relationship between Dr. Terón's participation on May 20, 1996, and Baby B's demise (*Exhibit 2, page 249, line 5 to page 250, line 16*).

6. Dr. Harkavy testified that in his opinion the ordering of Rocephin by Dr. Terón on January 13, 1996 (*Exhibit 2, page 244, lines 10-12*) and the patient's maintenance on Rocephin for ten days (*Exhibit 2, page 244, lines 1-5*) are considered substandard care. However, Dr. Harkavy specifically testified that the administration of Rocephin had no relation whatsoever with the damages actually

---

[1]Dr. Kenneth Harkavy's deposition was taken on February 19 and 20, 2001. Its transcription is enclosed as *Exhibit 2*. Dr. Harkavy's deposition ended on November 17, 2004, but the conclusion of Dr. Harkavy's deposition on November 17, 2004, did not relate at all to the treatment rendered by Dr. Iván Terón to the claimant babies. The conclusion of Dr. Harkavy's deposition on November 17, 2004, has not been transcribed as of this date.

suffered by Baby C (*Exhibit 2, page 246, lines 9-24*). Dr. Harkavy did not testify as to any other acts and/or omissions of Dr. Ivan Terón regarding Baby C (*Exhibit 2*).

7. Regarding the treatment on Baby D, Dr. Harkavy testified that no actions on behalf of any of the doctors was, in his opinion, the cause of the patient's demise (*Exhibit 2, page 240, line 6 to page 241, line 20*).

8. Dr. Harkavy specified the following acts as substandard care for **all** doctors who treated the patient. **Dr. Harkavy specifically testified that a doctor on a shift as was Dr. Iván Terón is not responsible for decisions on treatment made by the primary physicians as "Neonatologists"** (*Exhibit 2, page 288, line 24, to page 389, line 7*).

9. The specific allegations pertaining to all doctors for which Dr. Harkavy specifically imposed responsibility upon the primary physicians are the following:[2]

    a. <u>Baby A</u>: Consistent high arterial blood gases without any measures taken to reduce them. However, Dr. Harkavy testified that it was the nurses' responsibility to adjust the oxygen levels (*Exhibit 2, page 237, lines 4-8; page 239, lines 14-20*) and that there were no problems with the oxygen levels from 8:00 a.m. on May 11, 1996, to 8:00 a.m. May 12, 1996 (*Exhibit 2, page 239, lines 14-20*), period in which the patient was under Dr. Terón's care (medical chart).

    b. <u>Baby A</u>: Was kept NPO for 23 days, which was a judgment call and a decision made by the neonatologists in charge, (*Exhibit 2, page 387, lines 12-24*).

---

[2] We must emphasize that Dr. Harkavy testified that a doctor on a shift as was Dr. Iván Terón is not responsible for decisions on treatment made by the primary physicians as "Neonatologists" (*Exhibit 2, page 288, line 24, to page 389, line 7*).

    c.   <u>All Babies</u>: Low temperature readings for various days after admission, due to the responsibility of the neonatologists to establish the course of treatment to be followed and the temperatures for the babies (*Exhibit 2, page 288, line 24, to page 389, line 7*).

10. In his expert report dated December 9, 2000, Dr. Fredric B. Garner, expert retained by Dr. Terón, in his report specifically states that the treatment rendered by Dr. Terón to the quadruplets was one that complied with the applicable medical standards (*Exhibit 3*).

**WHEREFORE**, Dr. Ivan Terón herein prays from this Honorable Court that it take notice of the preceding Statement of Uncontested Material Facts.

**CERTIFICATE OF SERVICE:** I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to attorneys Andrés Guillermard Noble, PO Box 9949, San Juan, Puerto Rico 00908, Angel R. Del Corral, 130 Eleonor Roosevelt, San Juan, Puerto Rico 00918-3105, Igor Domínguez, El Monte Mall Suite 22, Avenida Muñoz Rivera 652, Hato Rey, Puerto Rico 00918, Pedro Toledo González, Julio Bogaricín Building, Suite L-06, Lobby, 1606 Ponce de León Avenue, Santurce, Puerto Rico 00909, Roberto Ruiz Comas, Andalucía 406 (Altos), Puerto Nuevo, San Juan, Puerto Rico 00920, Marta Elisa González, PO Box 195055, San Juan, Puerto Rico 00919-5055, Pedro J. Córdova, PO Box 9023998, San Juan, Puerto Rico 00902-3998, Alexis Mattei, PO Box 9023933, San Juan, Puerto Rico 00902-3933, Doris Quiñones Tridas, 113 Padre Las Casas, Suite 601, Urb. El Vedado, San Juan, Puerto Rico 00918-3116, Jeannette López de Victoria, P.O. Box 9024098, San Juan, Puerto Rico 00902-4098 and Gilda del C. Crúz Martinó, P.O. Box 9023875, San Juan, Puerto Rico 00902-3875.

Ponce, Puerto Rico, this 19th day of January, 2005.

                    **VIVAS & VIVAS**
                    P. O. Box 951
                    Ponce, Puerto Rico 00733-0951
                    Tels.  848-4420 - 848-5215

By:

*s/José Héctor Vivas*
**JOSE HECTOR VIVAS**
**USDC #127908**

99-06-1403 (99-4360 M/M)