IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | | |
|---|---|---|
| CARLOS A. GARCIA PEREZ, et al | * | |
|    Plaintiffs | * | CIVIL NO. 97-1703 (JGG) |
| v. | * | |
| ALVARO SANTAELLA, et al | * | |
|    Defendants-Third Party Plaintiffs | * | |
| v. | * | |
| DR MARIA T CASADO GARCIA, et al | * | |
|    Third Party Defendants | * | |

-----------------------------------------------------

# MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

TO THE HONORABLE COURT:

COMES NOW Dr. Iván Terón Méndez, through his undersigned attorneys, and respectfully states and prays:

### I. INTRODUCTION

Carlos A. García and Gisela Baerga, per se, and in representation of the conjugal partnership and of their minor daughter, Carla Isabel García Baerga, have premised the instant malpractice action on diversity of citizenship jurisdiction under 28 U.S.C. § 1332 (a) 2. They alleged medical malpractice against Dr. Iván Terón Méndez for the first time with the filing of the Amended Complaint on September 22, 2004.

Defendant, Ashford Presbyterian Hospital, filed a Third Party Complaint against Dr. Iván Terón and other doctors who provided medical treatment to plaintiffs' babies at Ashford Presbyterian Community Hospital in Puerto Rico. On October 5, 2004, Ashford filed a Motion for Voluntary Dismissal with regards to Dr. Ivan Terón. Judgment was entered accordingly on October 6, 2004.

Dr. Iván Terón sustains that claimants have failed to comply with the requirements for refuting the presumption under local law to the effect that the treatment rendered by Dr. Iván Terón Méndez to the claimant babies complied with the applicable medical standard.

## II. FACTS WITH RESPECT TO WHICH THERE IS NO CONTROVERSY

1. Plaintiifs rely solely on the testimony of Dr. Kenneth Harkavy to prove their allegations of medical malpractice against Dr. Ivan Terón Méndez.

2. In his expert report dated August 9, 1999, Dr. Kenneth Harkavy does not mention any acts or omissions of Dr. Ivan Terón Méndez as a deviation of the applicable medical standard (*Exhibit 1* of Statement of Uncontested Material Facts).

3. Dr. Kenneth Harkavy's testimony in his deposition does not present any evidence in which to base a claim against Dr. Iván Terón (*Exhibit 2* of Statement of Uncontested Material Facts).[1]

4. The elective extubation of Baby A on May 7, 1996, is considered by Dr. Harkavy as substandard care (*Exhibit 2* of Statement of Uncontested Material Facts, *page 248, lines 2-7*). Dr. Terón did not extubate nor give the order to

---

[1] Dr. Kenneth Harkavy's deposition was taken on February 19 and 20, 2001. Its transcription is enclosed as *Exhibit 2 of Statement of Uncontested Material Facts*. Dr. Harkavy's deposition ended on November 17, 2004, but the conclusion of Dr. Harkavy's deposition on November 17, 2004, did not relate at all to the treatment rendered by Dr. Iván Terón to the claimant babies. The conclusion of Dr. Harkavy's deposition on November 17, 2004, has not been transcribed as of this date.

extubate the patient. Dr. Harkavy's deposition testimony clearly stated that Dr. Terón's presence and treatment on May 7, 1996, did not have any relationship with Baby A's demise (*Exhibit 2* of Statement of Uncontested Material Facts, *page 248, lines 16-18*).

5. Dr. Harkavy testified that in his opinion Baby B did not receive adequate treatment for her condition of Sudomona Sepsis by all doctors who intervened in the case from May 18 to May 20, 1996 (*Exhibit 2* of Statement of Uncontested Material Facts, *page 248, lines 19-24; page 249, lines 5-8*). The only intervention by Dr. Iván Terón with Baby B within the periods specified by Dr. Harkavy for the treatment of Sudomona Sepdis was on May 20, 1996. Dr. Harkavy specifically answered that there is no relationship between Dr. Terón's participation on May 20, 1996 and Baby B's demise (*Exhibit 2* of Statement of Uncontested Material Facts, *page 249, line 5 to page 250, line 16*).

6. Dr. Harkavy testified that in his opinion the ordering of Rocephin by Dr. Terón on January 13, 1996 (*Exhibit 2* of Statement of Uncontested Material Facts, *page 244, lines 10-12*) and the patient's maintenance on Rocephin for ten days (*Exhibit 2* of Statement of Uncontested Material Facts, *page 244, lines 1-5*) are considered substandard care. However, Dr. Harkavy specifically testified that the administration of Rocephin had no relation whatsoever with the damages actually suffered by Baby C (*Exhibit 2* of Statement of Uncontested Material Facts, *page 246, lines 9-24*). Dr. Harkavy did not testify as to any other acts and/or omissions of Dr. Ivan Terón regarding Baby C (*Exhibit 2* of Statement of Uncontested Material Facts).

7. Regarding the treatment on Baby D, Dr. Harkavy testified that no actions on behalf of any of the doctors was, in his opinion, the cause of the patient's

demise (*Exhibit 2* of Statement of Uncontested Material Facts, *page 240, line 6, to page 241, line 20*).

8.   Dr. Harkavy specified the following acts as substandard care for **all doctors who treated the patient. Dr. Harkavy specifically testified that a doctor on a shift as was Dr. Iván Terón is not responsible for decisions on treatment made by the primary physicians as "Neonatologists",** (*Exhibit 2* of Statement of Uncontested Material Facts, *page 288, line 24, to page 389, line 7*).

9.   The specific allegations pertaining to all doctors for which Dr. Harkavy specifically imposed responsibility upon the primary physicians are the following:[2]

   a.   <u>Baby A</u>:  Consistent high arterial blood gases without any measures taken to reduce them.  However, Dr. Harkavy testified that it was the nurses' responsibility to adjust the oxygen levels (*Exhibit 2* of Statement of Uncontested Material Facts, *page 237, lines 4-8; page 239, lines 14-20*) and that there were no problems with the oxygen levels from 8:00 a.m. on May 11, 1996 to 8:00 a.m. May 12, 1996 (*Exhibit 2* of Statement of Uncontested Material Facts, *page 239, lines 14-20*), period in which the patient was under Dr. Terón's care (medical chart).

   b.   <u>Baby A</u>:  Was kept NPO for 23 days, which was a judgment call and a decision made by the neonatologists in charge (*Exhibit 2* of Statement of Uncontested Material Facts, *page 387, lines 12-24*).

---

[2] We must emphasize that Dr. Harkavy testified that a doctor on a shift as was Dr. Iván Terón is not responsible for decisions on treatment made by the primary physicians as "Neonatologists" (*Exhibit 2 of Statement of Uncontested Material Facts. , page 288, line 24, to page 389, line 7*).

    c.    <u>All Babies</u>: Low temperature readings for various days after admission, due to the responsibility of the neonatologists to establish the course of treatment to be followed and the temperatures for the babies (*Exhibit 2* of Statement of Uncontested Material Facts, *page 288, line 24, to page 389, line 7*).

10. In his expert report dated December 9, 2000, Dr. Fredric B. Garner, expert retained by Dr. Terón, specifically states that the treatment rendered by Dr. Terón to the quadruplets was one that complied with the applicable medical standards (*Exhibit* 3 of Statement of Uncontested Material Facts).

### III. GROUNDS FOR DISMISSAL OF THE AMENDED COMPLAINT

Article 1802 of the Civil Code of Puerto Rico provides for the civil liability in cases of medical malpractice (31 LPRA § 5141):

> "A person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done. Concurrent imprudence of the party aggrieved does not exempt from liability, but entails a reduction of the indemnity."

Article 1803 of the Civil Code of Puerto Rico (31 LPRA § 5142) provides for the liability of principals for acts of their agents and/or employee:

> "The obligation imposed by section 5141 of this title is demandable, not only for personal acts and omissions, but also for those of the persons for whom they should be responsible.
>
> The father, and, in the event of his death or incapacitation, the another, is liable for the damage caused by the minor children living with them.
>
> Guardians are liable for the damages caused by minors or incapacitated persons who are under their authority and live with them.
>
> Owners or directors of an establishment or enterprise are likewise liable for any damages caused by their employees in

> the service of the branches in which the latter are employed or on account of their duties.
>
> The Commonwealth is liable in this sense under the same circumstances and conditions as those under which a private citizen would be liable.
>
> Finally, masters or directors of arts and tradese liable for the damages caused by their pupils or apprentices while they are under their custody.
>
> The liability referred to in this section shall cease when the liable persons mentioned therein prove that they employed all the diligence of a good father of a family to preclude the damage."

In case of alleged medical malpractice, the plaintiff has the burden of proving that the treatment offered by the defendants was the factor that most probably caused the alleged damages, and that those damages were caused by the alleged acts of defendants. Cruz v. Centro Médico de Puerto Rico, 113 DPR 719 (1983); Rodríguez Crespo v. Dr. Hernández, 121 DPR 639, 650 (1988); Zambrana v. Santo Asilo de Damas, 109 DPR 517 (1980). There is also a presumption that the doctors rendered an adequate treatment to the patient, corresponding to plaintiff to present **sufficient evidence** to rebut the presumption that the treatment was adequate. This requires that the relation of cause and effect not be established by mere speculation. Sáez v. Municipio de Ponce, 84 PR 35 (1962); Ramos Orengo v. La Capital, 88 DPR 315 (1963); Crespo v. Hernández, supra; Santiago Otero v. Méndez, 94 JTS 38.

In Puerto Rico the minimum standards of care, knowledge and ability required from the doctors in cases of alleged professional medical malpractice is that of providing their patients that attention, that in the light in the modern means of communications, satisfies professional standards generally recognized for the medical profession. See: Oliveras v. Abreu, 101 DPR 209, 226 (1973); Ríos Ruiz v. Dr. Anthony Mark, 119 DPR 816, 820 (1987); López v. Hosp. Prebisteriano, Inc.,

107 DPR 197 (1978); Morales v. Hospital Matilde Brenes, 102 DPR 188 (1974); Negrón v. Municipio de San Juan, 107 DPR 375 (1978); Cruz Azul v. Centro Médico, 113 DPR 719 (1983); Pérez Torres v. Blaundell Ramos, 120 DPR 295 (1988); Rodríguez Crespo v. Dr. Hernández, supra; Medina Otero v. Méndez, supra.

In some cases for a plaintiff to establish a prima facie case of medical malpractice he has to: (1) present evidence on the minimum standards of knowledge and medical care applicable to general physicians or to the applicable specialty; (2) show that the defendant did not comply with those standards in the treatment of the patient; and (2) that his actions were the approximate cause of the damages suffered by the patient. See: Medina Santiago v. Dr. Alván Vélez, 120 DPR 380 (1988); Rodríguez Crespo v. Dr. Hernández, supra. Plaintiffs must established with expert witnesses which are the standards of care and scientific knowledge required for the medical profession in the treatment of certain patients. This evidence must show which are the standards in the medical profession in view of the scientific knowledge available by the means of communication and the continued education programs. Medina Santiago, supra; Rodríguez Crespo, supra. It has been established that negligence of the doctor or hospital has to be established by the presentation of competent expert witness; Quiñones v. Duarte Mendoza, 112 DPR 223 (1982); Oliveros v. Abreu, supra; Rodríguez Crespo, supra. In these type of actions of alleged medical malpractice under Article 1802 of the Civil Code of Puerto Rico, the negligence of the doctors is not presumed by the fact that the patient suffered damage or that the treatment was not successful. Rodríguez Crespo, supra; Ríos Ruiz v. Mark, 119 DPR 816 (1987).

If from the evidence presented various probable causes of the damage could apply, liability should not be imposed upon the doctor, unless from the examination of the totality of the evidence, it is evident that his negligent action was the one that most probably could have caused the damages. See Vda. de López v. Estado

Libre Asociado de Puerto Rico, 104 DPR 178, 183 (1975); Ramos Orengo v. La Capital, 88 DPR 315 (1963); Sáez v. Municipio de Ponce, 84 DPR 535, 543, 544 (1962); Zambrana v. Hospital Santo Asilo de Damas, 109 DPR 517 (1980); Cruz v. Centro Médico de Puerto Rico, 113 DPR 719 (1983). The relation of cause and effect in cases of alleged medical malpractice cannot be stablished based on speculations; Vda. de López, supra; Sáez, supra; Rivera v. Estado Libre Asociado de Puerto Rico, 99 DPR 890.

An action for alleged medical malpractice always relates to the occurrence of damages, which generally are impressive and painful. However, all human beings experience a natural feeling of compassion when they confront pain and suffering of another human being, judges must always have in mind that by the mere fact of the occurrence of damage, it does not mean that the doctor is liable for that damage.

A doctor has wide professional discretion in the treatment of a patient and he does not incur in liability if the treatment provided to the patient, although erroneous, is within the standards of what is considered reasonable and acceptable by the medical profession. See Pérez Torres v. Bladwell, 120 DPR 295 (1888); Lozada v. Estado Libre Asociado de Puerto Rico, 116 DPR 202, 217 (1985); Pérez Cruz v. Hospital La Concepción, 115 DPR 721 (184); Fernández v. Hospital General San Carlos, 113 DPR 761 (1983); López v. Hospital Prebisteriano, 107 DPR 197 (1978).

It is a valid defense for a doctor the existence of various standards within the medical authorities on whether a particular treatment or procedure is correct under the particular circumstances of a case. The honest and informed error of judgement on behalf of a doctor in the treatment of a patient does not make the doctor liable. See Cruz v. Centro Médico de Puerto Rico, 113 DPR 719 (1983); Pérez Torres v. Blausell, supra; Oliveros v. Abreu, 101 DPR 209, 227-28 (1973);

Morales v. Hospital Matilde Brenes, 102 DPR 188, 194 (1974); Rosado Rosado v. Estado Libre Asociado de Puerto Rico, 108 DPR 789, 795-96 (1979).

An honest and reasonable error of judgment in the procedure chosen by a doctor should not constitute sufficient bases for the imposition of liability upon him, specially when the conduct followed by him is an accepted practice in the modern medical profession under those particular circumstances, and when the medical authorities do not agree on the treatment that should be offered. See Rivera v. Estado Libre Asociado de Puerto Rico, 99 DPR 890 (1971); Cruz v. Centro Médico, supra; Fernández v. Hospital General San Carlos, Inc., 113 DPR 761 (1983); Rodríguez Crespo v. Dr. Hernández, 121 DPR 639, 649 (1988).

It is clear from the allegations of the Amended Complaint, from the Statement of Material Facts, and from the exhibits to the Statement of Material Facts, that plaintiffs lack the necessary evidence to establish a medical malpractice claim against Dr. Iván Terón Méndez.

### IV. LEGAL ARGUMENTATION AS TO APPLICABILITY OF MOTION FOR SUMMARY JUDGMENT

The standards for summary judgment have been well-established: A District Court should grant a motion for summary judgment if the pleadings, depositions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); Lipsett v. Unvi. of Puerto Rico, 864 F.2d 881, 894 (1st Cir. 1988). A factual dispute is "material" if it "might affect the outcome of the suit under the governing law," Anderson v. Liberty Lobby, Inc. 447 U.S. 242, 248 (1986), and "genuine", "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. The burden of establishing the nonexistence of

a "genuine" issue as to a material fact is on the moving party. <u>Celotex Corp. v. Catrett</u>, 477 U.S.317, 331 (1986). This burden has two components: (1) an initial burden of production, which shifts to the nonmoving party if satisfied by the moving party; and (2) an ultimate burden of persuasion, which always remains on the moving party. Id. Although the ultimate burden of persuasion remains on the moving party, the nonmoving party will not defeat a properly supported motion for summary judgment by merely underscoring the existence of some alleged factual dispute between the parties;" the requirement is that there be a genuine issue of material fact. <u>Anderson</u>, 477 U.S. at 247-48.

In addition, "factual dispute that are irrelevant or unnecessary will not be counted." Id. at 248. Under Rule 56(e) of the Federal Rules of Civil Procedures, the nonmoving party "may not rest upon the mere allegations or denials of the adverse party's pleadings, but... must set forth specific facts showing that there is a genuine issue for trial." Fed. P. Civ. <u>Anderson</u>, 477 U.S.at 256. Summary judgment exists to "pierce the boilerplate of the pleadings and assy the parties' proof in order to determine whether trial is actually required." <u>Wynne</u> v. <u>Tufts Univ. Sch. Of Medicine</u>, 976 F.2d 791, 794 (1st Cir. 1992).

In accordance to Local Rules for the United District Court for the District of Puerto Rico, Rule 311.4 and 311.12, Dr. Ivan Terón Méndez is filing, annexed to this Memorandum, a separate Statement of Uncontested Material Facts as to which defendant contends there are no genuine issues to be tried.

**WHEREFORE**, Dr. Ivan Terón Méndez herein prays from this Honorable Court that it enter judgment dismissing the Amended Complaint filed by Plaintiffs, with the imposition of costs and attorney's fees.

**CERTIFICATE OF SERVICE:** I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to attorneys Andrés Guillermard Noble, PO Box 9949, San Juan, Puerto Rico 00908, Angel R. Del Corral, 130 Eleonor Roosevelt, San Juan, Puerto Rico 00918-3105, Igor Domínguez, El Monte Mall Suite 22, Avenida Muñoz Rivera 652, Hato Rey, Puerto Rico 00918, Pedro Toledo González, Julio Bogaricín Building, Suite L-06, Lobby, 1606 Ponce de León Avenue, Santurce, Puerto Rico 00909, Roberto Ruiz Comas, Andalucía 406 (Altos), Puerto Nuevo, San Juan, Puerto Rico 00920, Marta Elisa González, PO Box 195055, San Juan, Puerto Rico 00919-5055, Pedro J. Córdova, PO Box 9023998, San Juan, Puerto Rico 00902-3998, Alexis Mattei, PO Box 9023933, San Juan, Puerto Rico 00902-3933, Doris Quiñones Tridas, 113 Padre Las Casas, Suite 601, Urb. El Vedado, San Juan, Puerto Rico 00918-3116, Jeannette López de Victoria, P.O. Box 9024098, San Juan, Puerto Rico 00902-4098 and Gilda del C. Crúz Martinó, P.O. Box 9023875, San Juan, Puerto Rico 00902-3875.

Ponce, Puerto Rico, this 19th day of January, 2005.

**VIVAS & VIVAS**
P. O. Box 951
Ponce, Puerto Rico 00733-0951
Tels. 848-4420 - 848-5215

By:

*s/José Héctor Vivas*
**JOSE HECTOR VIVAS**
**USDC #127908**

99-06-1403 (99-4360 M/M)